T.C. Memo. 1998-36


UNITED STATES TAX COURT


NEIL M. BAIZER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21046-94.                    Filed January 27, 1998.


Frederick A. Romero, for petitioner.

Clifton B. Cates III, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, Judge:  Respondent determined deficiencies in petitioner's excise taxes imposed on prohibited transactions by section 4975[1] and additions to tax[2] as follows:

---

[1]  All section references are to the Internal Revenue Code in effect for the years at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and

(continued...)

| Tax Year Ended | First-Tier Deficiency Sec. 4975(a) | Second-Tier Deficiency Sec. 4975(b) | Sec. 6653(a)(1)(A) | Additions to Tax Sec. 6653(a)(1) | Sec. 6651(a)(1) |
|---|---|---|---|---|---|
| 12/31/86 | $11,215 | -- | $560.75 | -- | $2,803.75 |
| 12/31/87 | 11,215 | -- | 560.75 | -- | 2,803.75 |
| 12/31/88 | 11,215 | -- | -- | $560.75 | 2,803.75 |
| 12/31/89 | 11,215 | -- | -- | -- | 2,803.75 |
| 12/31/90 | 11,215 | -- | -- | -- | 2,803.75 |
| 12/31/91 | 11,215 | -- | -- | -- | 2,803.75 |
| 12/31/92 | 11,215 | -- | -- | -- | 2,803.75 |
| 12/31/93 | 11,215 | -- | -- | -- | 2,803.75 |
| 08/18/94 | -- | $224,298 | -- | -- | -- |

This case involves the question of whether an assignment of accounts receivable by petitioner to a defined benefit plan was a prohibited transaction giving rise to an excise tax under section 4975, which was added to the Code by section 2003(a) of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, 971. More specifically, the issues for decision are: (1) Whether the assignment of an employer's accounts receivable to a defined benefit plan is a prohibited transaction within the meaning of section 4975(c), resulting in petitioner's being liable under section 4975(a); (2) whether the assignment of accounts receivable was not corrected within the meaning of section 4975(f)(5), resulting in petitioner's being liable under section 4975(b); (3) whether petitioner is liable

---

[1](...continued)
Procedure.

[2] Respondent concedes that petitioner is not subject to the first-tier excise tax of sec. 4975(a) or any additions to tax for the taxable years 1986 and 1987, as determined in the notice of deficiency. Additionally, respondent concedes petitioner is not subject to an addition to tax under sec. 6653(a)(1) for the taxable year ended Dec. 31, 1988.

for an addition to tax under section 6651(a)(1) for failure to file excise tax returns; and (4) whether respondent had authority to issue a notice of deficiency in regard to a prohibited transaction when the Department of Labor had previously entered into a stipulation of consent judgment with petitioner.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein. Neil M. Baizer (petitioner) resided in Los Angeles, California, when the petition was filed.

Cohen & Baizer Accountancy Corp. (the Corporation) is a California corporation that was incorporated on August 4, 1980. Petitioner and M. Richard Cohen were officers and directors of the Corporation, and together they were the majority shareholders of the Corporation. The Corporation has been inactive since December 1987. Although its corporate charter was suspended by the California secretary of state's office on December 1, 1989, the Corporation has not been dissolved.

Effective February 1, 1981, the Corporation adopted, for the benefit of its employees and their beneficiaries, the Cohen & Baizer Accountancy Corporation Defined Benefit Pension Plan and associated Trust (collectively, the Plan). At all times relevant, the Plan was a qualified plan and an exempt trust within the meaning of sections 401(a) and 501(a). Both the Corporation and the Plan maintained tax years ending January 31.

The Corporation had discretionary authority and responsibility in the administration of the Plan. Management of the Plan was delegated to an administrative committee, which consisted of petitioner and Mr. Cohen. Participants in the Plan included petitioner, Mr. Cohen, Harold Breslow, and Robert Levine.

Petitioner and Mr. Cohen were fiduciaries with respect to the Plan, within the meaning of section 4975(e)(3). At all times relevant, the cotrustees of the Plan were petitioner and Mr. Cohen. Both petitioner and Mr. Cohen were "disqualified persons" with respect to the Plan, within the meaning of section 4975(e)(2).

Under the minimum funding standards of section 412, the Corporation was required to contribute $186,200 to the Plan for the plan year ending January 31, 1984.[3] While the Corporation claimed a $186,200 deduction on its corporate income tax return for its taxable year ending January 31, 1985, as of January 31, 1988, the Corporation had not paid the 1984 mandatory contribution. Instead, for the plan year ending January 31, 1985, the Corporation set up on the Plan's book two notes receivable from "H. Bogart" in the amounts of $181,474 and $4,756. These H. Bogart loans were fictitious. Later, in an adjusting journal entry for the year ending January 31, 1988, the

---

[3] For each of the Plan years which ended Jan. 31, 1984 through 1994, inclusive, there was an accumulated funding deficiency of $184,571.

H. Bogart notes receivable of $186,229.72 were eliminated and replaced with a contribution receivable.

On or about May 31, 1988, the Corporation transferred $273,558 (face value) of its accounts receivable to the Plan for the purpose of satisfying, in part, the Corporation's funding obligation under section 412. At this time, the Corporation was indebted to the Plan in the amount of $184,571 plus interest in the amount of $24,609.47. This transfer was implemented by two documents: "Assignment of Accounts Receivable" and "Agreement". Both documents were dated May 31, 1988, and both were signed by Mr. Cohen as President of the Corporation and by petitioner as Secretary of the Corporation. According to the agreement, the Corporation assigned the accounts receivable without recourse.

Prior to the assignment, the Corporation did not attempt to obtain an exemption for the transfer with the Department of Labor (DOL). Thereafter, the Corporation never replaced the accounts receivable assigned to the Plan with cash. While Dorothy Salata was authorized on behalf of the Plan to collect the transferred accounts receivable, there was no evidence presented regarding the amount, if any, of actual collections.

With respect to the transfer of accounts receivable to the Plan, no one with the Corporation or the Plan ever filed with respondent a Form 5330, Return of Excise Taxes Related to Employee Benefit Plans.

By letter dated December 6, 1991, the IRS notified the DOL about its intent to disqualify the Plan for failing to satisfy the exclusive benefit rule of section 401(a).  At this time, the DOL was pursuing ERISA title I remedies against the Plan.  In February 1993, petitioner (individually and as trustee of the Plan) and the estate of Mr. Cohen entered into a "Stipulation for Consent Judgment: Judgment" (Consent Judgment) with the DOL.  By consenting to the Consent Judgment, "The parties have agreed to the entry of this judgment as final adjudication of all claims, obligations, penalties and remedies of the * * * [DOL] related to the allegations in the complaint, without admitting or denying any of the allegations contained therein."  Further, the Consent Judgment provided that "The obligations imposed by this Judgment are not binding on any government agency other than the United States Department of Labor."

On August 18, 1994, respondent issued a notice of deficiency to petitioner, in the amounts set forth above, determining excise tax deficiencies pursuant to section 4975(a) and (b), as well as additions to tax.  Respondent determined that petitioner was a "disqualified person" and that he had participated in a prohibited transaction under section 4975(c).

                              OPINION

We begin by noting that, as a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a);

<u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Respondent determined deficiencies in petitioner's excise tax liability under both subsections (a) and (b) of section 4975.

Section 4975 was added to the Internal Revenue Code by title II of ERISA.  ERISA sec. 2003(a), 88 Stat. 971.  Section 4975(a) and (b) imposes a two-tier excise tax on prohibited transactions. The policy behind the enactment of section 4975 was to tax disqualified persons who engage in self-dealing rather than innocent employees, who were previously faced with disqualification of the plan when a prohibited transaction occurred.  S. Rept. 93-383, at 94-95 (1974), 1974-3 C.B. (Supp.) 80, 173-174.  In this area, congressional action has been largely to protect participants and their beneficiaries by ensuring that the plan's assets are held for their exclusive benefit.  H. Conf. Rept. 93-1280, at 303 (1974), 1974-3 C.B. 415, 464.

## I. Section 4975(a)

Section 4975(a) imposes a 5-percent tax on the "amount involved"[4] with respect to the "prohibited transaction".[5]  It

---

[4]  Sec. 4975(f)(4) provides that

The term "amount involved" means, with respect to a prohibited transaction, the greater of the amount of money and the fair market value of the other property given or the amount of money and the fair market value of the other property received * * * For purposes of the preceding sentence, the fair market value--

(A) in the case of the tax imposed by subsection (a) shall be determined as of the date on which the
(continued...)

provides that the tax shall be paid by any disqualified person who participates in a prohibited transaction (other than a fiduciary acting only as such).  Sec. 4975(a).

_____

[4](...continued)
    prohibited transaction occurs; and

    (B) in the case of the tax imposed by subsection (b),
    shall be the highest fair market value during the
    taxable period.

[5]  In sec. 4975(c)(1), Congress enumerated six categories of prohibited transactions.  Sec. 4975(c)(1) provides that

    (1) General Rule.  For purposes of this section, the
    term "prohibited transaction" means any direct or
    indirect --

        (A) sale or exchange, or leasing, of any
        property between a plan and a disqualified
        person;
        (B) lending of money or other extension of
        credit between a plan and a disqualified
        person;

        (C) furnishing of goods, services, or
        facilities between a plan and a disqualified
        person;

        (D) transfer to, or use by or for the
        benefit of, a disqualified person of the
        income or assets of a plan;

        (E) act by a disqualified person who is a
        fiduciary whereby he deals with the income ro
        assets of a plan in his own interest or for
        his own account; or

        (F) receipt of any consideration for his own
        personal account by any disqualified person
        who is a fiduciary from any party dealing
        with the plan in connection with a
        transaction involving the income or assets of
        the plan.

A prohibited transaction includes any direct or indirect sale or exchange, or leasing, of any property between a plan and a disqualified person. Sec. 4975(c)(1)(A). Section 4975(e)(1) defines "plan" as a trust described in section 401(a) which forms part of a plan. The parties stipulated that the Plan was a qualified plan and an exempt trust within the meaning of sections 401(a) and 501(a). A disqualified person includes a fiduciary, or an owner, direct or indirect, of 50 percent or more of the stock of a corporation whose employees are covered by the plan. Sec. 4975(e)(2)(A), (E). The parties stipulated that petitioner was a "disqualified person" with respect to the Plan, within the meaning of section 4975(e)(2). A disqualified person also includes an employer any of whose employees are covered by the plan. Sec. 4975(e)(2)(C). Therefore, the Corporation is a disqualified person within the meaning of section 4975(e)(2).

The issue is whether the contribution of the accounts receivable to the Plan constituted a prohibited transaction under section 4975(c)(1). In Commissioner v. Keystone Consol. Indus., Inc., 508 U.S. 152, 158 (1993), the Supreme Court analyzed whether the transfer of property was a "sale or exchange" within the reach of section 4975(c)(1)(A). The Court held that section 4975(c)(1)(A) prohibits the transfer of property in satisfaction of an employer's obligation to fund a qualified defined benefit plan. Id. at 159. In construing section 4975(c)(1)(A), the Court accepted the already-settled meaning of the phrase "sale or

exchange" to include the transfer of property in satisfaction of such a monetary obligation.  Id. at 158-159.  Furthermore, the Court noted that section 4975(c)(1)(A) not only barred a "sale or exchange" but also "any direct or indirect * * * sale or exchange."  Id. at 159.  The Court concluded that "The contribution of property in satisfaction of a funding obligation is at least both an indirect type of sale and a form of exchange, since the property is exchanged for diminution of the employer's funding obligation."  Id.

In this case the record shows that the Corporation was indebted to the Plan.  For the plan year ended January 31, 1984, the Corporation was required to contribute $186,200 to the Plan to satisfy the minimum funding standard of section 412.  The Corporation created two fictitious notes receivable from "H. Bogart" and then claimed a deduction of $186,200 on its corporate income tax return for its taxable year ended January 31, 1985.  However, as of January 31, 1988, the Corporation had not made the 1984 mandatory contribution.  Later in 1988, the Corporation assigned $273,558 of its accounts receivable for the purpose of satisfying the Corporation's funding obligation under section 412.  The assignment was implemented through two documents, signed by both Mr. Cohen and petitioner, dated May 31, 1988: "Agreement" and "Assignment of Accounts Receivable".  Through the assignment of accounts receivable, the Corporation sought to be relieved of its funding obligation to the Plan.

The assignment of the accounts receivable, whether they were encumbered or unencumbered,[6] to satisfy the Corporation's funding obligation under section 412 was a "sale or exchange".  See Commissioner v. Keystone Consol. Indus., Inc., supra; Zabolotny v. Commissioner, 7 F.3d 774, 776-777 (8th Cir. 1993), affg. in part and revg. in part on other ground 97 T.C. 385 (1991).  Therefore, we hold that the assignment of the accounts receivable by the Corporation, a disqualified person, to the Plan was a prohibited transaction under section 4975(c)(1)(A).[7]

Section 4975(a) imposes a 5-percent excise tax, which shall be paid by any disqualified person who participates in a prohibited transaction.  Participation, under section 4975, occurs any time a disqualified person is involved in a transaction in a capacity other than as a fiduciary acting only as such.  Sec. 4975(a); O'Malley v. Commissioner, 96 T.C. 644,

---

[6] The record does not reveal whether the accounts receivable were encumbered.  If they were encumbered, sec. 4975(f)(3) would be applicable:  "A transfer of real or personal property by a disqualified person to a plan shall be treated as a sale or exchange if the property is subject to a mortgage or similar lien which the plan assumes".  Even if the accounts receivable were not encumbered, the transfer constitutes a sale or exchange because it was in satisfaction of a debt. Commissioner v. Keystone Consol. Indus., Inc., 508 U.S. 152, 159 (1993).

[7] This is consistent with Congress' goal in implementing ERISA and sec. 4975.  In enacting ERISA in 1974, "Congress' goal was to bar categorically a transaction that was likely to injure the pension plan." Commissioner v. Keystone Consol. Indus., Inc., supra at 160.  In this case, the contribution of accounts receivable presents concern over valuation and imposes collection duties on the Plan.

651 (1991); sec. 53.4941(a)-1(a)(3), Foundation Excise Tax Regs. Further, those who participate in a section 4975 prohibited transaction are liable for the excise tax notwithstanding that they may have acted innocently or in good faith. Rutland v. Commissioner, 89 T.C. 1137, 1146 (1987). In signing the Agreement and Assignment of Accounts Receivable as a corporate officer, petitioner, along with Mr. Cohen, implemented the transfer of accounts receivable to the Plan. In doing this, we find that petitioner, a disqualified person, participated in the prohibited transaction, which results in petitioner's being liable for the excise tax of section 4975(a).

Section 4975(a) imposes an excise tax of 5 percent of the "amount involved" with respect to the prohibited transaction for each year during the "taxable period". Under section 4975(f)(2), the taxable period is the period beginning on the date of the prohibited transaction and ending on the earlier of (A) the date of mailing a notice of deficiency, (B) the date on which the section 4975(a) tax is assessed, or (C) the date on which correction of the prohibited transaction is completed. Therefore, the taxable period is May 31, 1988 (date of the prohibited transaction), to August 18, 1994 (date of mailing the notice of deficiency).

The amount involved is the greater of the amount of money and the fair market value of the property given or the amount of money and the fair market value of the property received. Sec.

4975(f)(4).  Since the prohibited transaction was the assignment of the accounts receivable by the Corporation to the Plan, the amount involved is the fair market value of the accounts receivable on May 31, 1988.  In the notice of deficiency, respondent determined the fair market value of the accounts receivable assigned to the Plan to be $224,298.  Because petitioner has not provided any contrary evidence, respondent's determination of the fair market value of the receivables will stand.

Therefore, petitioner is liable for the first-tier tax.  We sustain respondent's determination.

## II. Section 4975(b)

Section 4975(b) imposes a second-tier tax equal to 100 percent of the amount involved where the prohibited transaction is not corrected within the taxable period.  Section 4975(f)(5) provides that

> The terms "correction" and "correct" mean, with respect to a prohibited transaction, undoing the transaction to the extent possible, but in any case placing the plan in a financial position not worse than that in which it would be if the disqualified person were acting under the highest fiduciary standards.

In this case, the taxable period began on the date that the prohibited transaction occurred, May 31, 1988, and ended on the

date of mailing of the notice of deficiency, August 18, 1994.[8]
Sec. 4975(f)(2)(A).

The statute mandates that a correction must occur which
undoes the transaction to the extent possible.  Sec. 4975(f)(5).
The temporary regulations under section 4975 provide that, in the
absence of permanent regulations for section 4975(f)(4) and (5),

---

[8]  Petitioner contends that the second-tier tax of sec.
4975(b) is not applicable because of ERISA sec. 502(i), 29 U.S.C.
1132(i) (1988).  ERISA sec. 502(i) provides the following:

> In the case of a transaction prohibited by section 1106
> of this title by a party in interest with respect to a
> plan to which this part applies, the Secretary may
> assess a civil penalty against such party in interest.
> The amount of such penalty may not exceed 5 percent of
> the amount involved in each such transaction * * * for
> each year or part thereof during which the prohibited
> transaction continues, except that, if the transaction
> is not corrected * * * within 90 days after notice from
> the Secretary * * * such penalty may be in an amount
> not more than 100 percent of the amount involved. * * *
> [Emphasis added.]

Petitioner argues that the 100-percent excise tax is applicable
only if the transaction is not corrected within 90 days from the
notice from the Secretary.  According to petitioner, the notice
mentioned is the notice of deficiency.  Petitioner argues that
the filing of the petition with the Tax Court within the 90-day
period makes the 100-percent second-tier penalty inapplicable.
However, ERISA sec. 502(i) establishes the time in which the
Secretary of Labor (not the Secretary of the Treasury) can assess
a civil penalty (not the tax penalty under sec. 4975).  The
second-tier tax of sec. 4975(b) applies if a prohibited
transaction is not corrected within the "taxable period", which
is defined under sec. 4975(f)(2).  In this case, the taxable
period ended on the date of the mailing of the notice of
deficiency.  Therefore, the second-tier tax is applicable if we
find that the transaction was not corrected within the taxable
period.  See sec. 4961 (providing abatement of second-tier taxes
if the taxable event is corrected within the "correction period"
as provided in sec. 4963).

section 53.4941(e)-1, Foundation Excise Tax Regs., may be relied upon in interpreting terms appearing both in section 4941(e) and section 4975(f). Sec. 141.4975-13, Temporary Excise Tax Regs., 41 Fed. Reg. 32890 (Aug. 6, 1976); see also Leib v. Commissioner, 88 T.C. 1474, 1482 (1987). The regulations under section 4941, which relate to self-dealings involving private foundations, are instructive in deciding whether a prohibited transaction has been properly corrected. Section 53.4941(e)-1(c)(3), Foundation Excise Tax Regs., provides the following: "in the case of the sale of property to a private foundation by a disqualified person for cash, undoing the transaction includes, but is not limited to, requiring rescission of the sale where possible." (Emphasis added.)

The prohibited transaction was the assignment of the accounts receivable by the Corporation to the Plan. With this exchange, the Corporation's funding obligation was satisfied. While this was not a straight cash sale of the accounts receivable to the Plan, the transaction is economically similar when the following two steps are combined: First, sale of accounts receivable for cash; second, the Corporation's contributing the cash to discharge its funding obligation.

A rescission could occur if the Corporation replaced the assigned accounts receivable with cash. While this was feasible, the Corporation has never replaced the accounts receivable contributed to the Plan with cash.

While section 4975 and its corresponding regulations first look to a rescission of the transaction, a correction may nevertheless occur even when a rescission is not possible. See sec. 53.4941(e)-1(c)(3), Foundation Excise Tax Regs. For example, the transaction could have been "undone" by the Plan's collection of the assigned accounts receivable. In collecting the accounts, the Plan would have had cash, which does not have the same potential for abuse as the accounts receivable. Petitioner offered no evidence regarding the collection of the accounts receivable. The parties stipulated that Dorothy Salata was employed by the Plan to collect the transferred accounts receivable. However, there was no evidence submitted to determine any amounts actually collected on the $273,558 accounts receivable.

Petitioner argues that each participant was paid in full with the lump-sum equivalent of the participant's benefits, and thus, there was a correction. According to petitioner, any payments to the Plan would result in a refund to the corporation, since the plan participants, Harold Breslow and Robert Levine, received their full benefit and petitioner signed an irrevocable waiver of his rights to Plan benefits.

We reject petitioner's argument. Examining the record, we find no documentary evidence that all rank and file employees were paid their full vested interest, especially in light of Mr. Levine's testimony that he did not receive the full present value

of his accrued benefits.  Even if the participants had received their full benefits, this would not have "undone" the prohibited transaction as intended by the statute.

We find that petitioner has not proven that the transaction was corrected within the meaning of section 4975(f)(5).  We hold that the second-tier tax under section 4975(b) was properly determined.

## III. Additions to Tax:  Section 6651(a)(1)

Next, we turn to the additions to tax under section 6651(a)(1).  Section 6651(a)(1) imposes a tax for the failure to file a required return unless it is shown that the failure is due to reasonable cause and not due to willful neglect.

Under section 6011 and section 54.6011-1(b), Pension Excise Tax Regs., every disqualified person liable for the tax imposed under section 4975(a) with respect to a prohibited transaction shall file an annual return on Form 5330 for each taxable year in the taxable period.[9]  See Janpol v. Commissioner, 102 T.C. 499, 500 (1994).  It is undisputed that no one ever filed with the IRS a Form 5330 with respect to the transfer of the Corporation's accounts receivable to the Plan.  Petitioner has not presented any evidence or argument on brief regarding the section

---

[9]  In this case, the taxable period is the period commencing May 31, 1988, and ending Aug. 18, 1994.

6651(a)(1) addition to tax.[10]  We sustain respondent's determination.

## IV. Authority

### Reorganization Plan No. 4 of 1978

Seeking to avoid liability for a prohibited transaction under section 4975, petitioner contends that the Reorganization Plan No. 4 of 1978 (Reorganization Plan), 3 C.F.R. 332 (1979), 5 U.S.C. app. at 1582 (1994), 92 Stat. 3790 (1978), delegated exclusive authority to the DOL to determined prohibited transaction violations and thus prevents the IRS from separately determining whether a prohibited transaction occurred.  According to petitioner, the IRS has authority under section 4975 "generally only in those circumstances where the Department of Labor initially has determined the violation to have occurred or in those circumstances where the Department of Labor has not undertaken a response."

ERISA was enacted in 1974, setting up an administrative system for employee benefit plans.  ERISA section 2(b), 88 Stat. 829, 833, provides that

> the policy of this Act [is] to protect interstate
> commerce and the interests of participants in employee
> benefit plans and their beneficiaries, by requiring the
> disclosure and reporting to participants and
> beneficiaries of financial and other information with
> respect thereto, by establishing standards of conduct,

---

[10]  The only argument that petitioner made was that since no prohibited transaction occurred, there was no requirement to file a Form 5330.

responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

To implement these goals, ERISA divided the statutory responsibilities among three agencies: DOL, IRS, and the Pension Benefit Guaranty Corporation (PBGC). The Code and ERISA vested jurisdiction with the DOL and the IRS in the area of prohibited transactions.

Four years later, to eliminate overlap and duplication in administration, the Reorganization Plan (which was entitled "Employee Retirement Income Security Act Transfers") was enacted and went into effect on December 31, 1978, under Executive Order No. 12108, 3 C.F.R. 275 (1979). The Reorganization Plan[11] was expected to reduce delays in two areas: (1) Processing exemptions and (2) issuing regulations pursuant to ERISA. These responsibilities were specifically delegated to the DOL, which is primarily responsible for fiduciary standards. Reorg. Plan sec. 102(a).

In granting authority to the DOL, Reorganization Plan section 102(a) provides:

> Except as otherwise provided in Section 105 of this Plan, all authority of the Secretary of the Treasury to issue the following described documents

---

[11] Reorganization Plan sec. 107 denotes the interim nature of the reorganization plan by calling for an evaluation by Jan. 31, 1980. Reorganization Plan No. 4 of 1978 (Reorganization Plan), 3 C.F.R. 332 (1979), 5 U.S.C. app. at 1582 (1994), 92 Stat. 3790 (1978).

pursuant to the statutes hereinafter specified is hereby transferred to the Secretary of Labor:

(a) regulations, rulings, opinions, and exemptions under section 4975 of the Code,

EXCEPT for (i) subsections 4975(a), (b), (c)(3), (d)(3), (e)(1), and (e)(7) of the Code; (ii) to the extent necessary for the continued enforcement of subsections 4975(a) and (b) by the Secretary of the Treasury, subsections 4975(f)(1), (f)(2), (f)(4), (f)(5) and (f)(6) of the Code; and (iii) exemptions with respect to transactions that are exempted by subsection 404(c) of ERISA from the provisions of Part 4 of Subtitle B of Title 1 of ERISA; and

(b) regulations, rulings, and opinions under subsection 2003(c) of ERISA.

EXCEPT for subsection 2003(c)(1)(B).

In applying Reorganization Plan section 102, Reorganization Plan section 105 provides the following in regard to enforcement by the Secretary of the Treasury:

The transfers provided for in Section 102 of this Plan shall not affect the ability of the Secretary of the Treasury, subject to the provisions of Title III of ERISA relating to jurisdiction, administration, and enforcement, (a) to audit plans and employers and to enforce the excise tax provisions of subsections 4975(a) and 4975(b) of the Code, to exercise the authority set forth in subsections 502(b)(1) and 502(h) of ERISA, or to exercise the authority set forth in Title III of ERISA, including the ability to make the interpretations necessary to audit, to enforce such taxes, and to exercise such authority * * *. However, in enforcing such excise taxes and, to the extent applicable, in disqualifying such plans the Secretary of the Treasury shall be bound by the regulations, rulings, opinions, and exemptions issued by the Secretary of Labor pursuant to the authority transferred to the Secretary of Labor as provided in Section 102 of this Plan.

As a result, Reorganization Plan section 102(a) provides the DOL with "all authority" for "regulations, rulings, opinions, and exemptions under section 4975" subject to specified exceptions, including the exception that Reorganization Plan section 102(a) does not grant the DOL authority over section 4975(a) and (b). The IRS retains control over the enforcement of the section 4975 excise tax. Reorg. Plan secs. 102(a), 105. Pursuant to its authority to enforce the excise taxes of section 4975(a) and (b), the IRS made a determination that petitioner participated in a transaction prohibited under section 4975(c)(1).

Petitioner contends that the DOL has exclusive authority to make the determination whether a transaction is prohibited under section 4975(c)(1).[12] In enacting section 4975(c)(1), Congress specifically enumerated six categories of prohibited transactions. Leib v. Commissioner, 88 T.C. at 1478. This provides a detailed definition of a prohibited transaction, and we are satisfied that the IRS, in the exercise of its power to enforce the excise tax, had authority to determine that petitioner engaged in such a transaction.

---

[12] In making his argument, petitioner relies on ERISA sec. 502(i), 29 U.S.C. sec. 1132(i) (1988), which provides that the Secretary of Labor may assess a civil penalty against a party in interest. While this clearly gives the DOL authority over the civil penalties for violation of the rules in ERISA against prohibited transactions, sec. 4975 deals with an excise tax, not a civil penalty.

ERISA and the Code provide for interagency communication and coordination between the DOL and the IRS regarding prohibited transactions. ERISA section 3003(a), 29 U.S.C. section 1203(a) (1988), provides that

> Unless the Secretary of the Treasury finds that the collection of a tax is in jeopardy, in carrying out the provisions of section 4975 of Title 26 (relating to tax on prohibited transactions) the Secretary of the Treasury shall, in accordance with the provisions of subsection (h) of such section, notify the Secretary of Labor before sending a notice of deficiency with respect to the tax imposed by subsection (a) or (b) of such section, and, in accordance with the provisions of subsection (h) of such section, afford the Secretary an opportunity to comment on the imposition of the tax in any case.

A corresponding coordination provision is contained in section 4975(h), which requires that before sending a notice of deficiency, the Secretary of the Treasury must notify the Secretary of Labor and provide him with a reasonable opportunity to obtain a correction of the prohibited transaction or to comment on the imposition of the tax.

In the provisions of section 4975(h) and ERISA section 3003, there is no statement that the DOL must first determine that there was a prohibited transaction before the IRS can determine a section 4975 excise tax. Rather, the IRS, before sending a notice of deficiency in section 4975 excise tax, is to notify the DOL and to provide the DOL with an opportunity to correct the prohibited transaction or to comment on the imposition of the tax.

Further, the DOL and the IRS have differing roles in the area of prohibited transactions.  The DOL's primary function is to protect the rights of workers, while the IRS' primary function is to protect the revenue.  Winger's Dept. Store, Inc. v. Commissioner, 82 T.C. 869, 888 (1984); see H. Conf. Rept. 93-1280, supra at 306, 1974-3 C.B. at 467.  Under the labor provisions, a fiduciary is personally liable to the plan for losses attributable to a breach of fiduciary duty, as well as restoring any profits made on the transaction.[13]  On the other

_____

[13]    The legislative history of ERISA reflects the congressional understanding that the perspectives of the DOL and IRS are different:

> The conference substitute establishes rules governing the conduct of plan fiduciaries under the labor laws (title I) and also establishes rules governing the conduct of disqualified persons (who are generally the same people as "parties in interest" under the labor provisions) with respect to the plan under the tax laws (title II).  This division corresponds to the basic difference in focus of the two departments.  The labor law provisions apply rules and remedies similar to those under traditional trust law to govern the conduct of fiduciaries.  The tax law provisions apply an excise tax on disqualified persons who violate the new prohibited transaction rules; this is similar to the approach taken under the present rules against self-dealing that apply to private foundations.
>     The labor provisions deal with the structure of plan administration, provide general standards of conduct for fiduciaries, and make certain specific transactions "prohibited transactions" which plan fiduciaries are not to engage in.  The tax provisions include only the prohibited transaction rules and apply only to disqualified person, not fiduciaries * * *.  To the maximum extent possible, the prohibited transaction rules are identical in the labor and tax provisions, so they will apply in the same manner to the same

(continued...)

hand, the tax provisions of section 4975 impose a two-tier excise tax on the disqualified person who participated in the prohibited transaction.  See Rutland v. Commissioner, 89 T.C. at 1146. Under the Reorganization Plan, the IRS retained its authority to enforce the excise tax of section 4975, and the DOL retained its authority to bring civil actions.  Reorg. Plan secs. 104 and 105.

Considering the role established in Reorganization Plan sections 102 and 105 and the legislative history, we hold that the DOL does not have sole jurisdiction to determine whether a prohibited transaction occurred.  The Code and ERISA provide that the IRS must notify the DOL before issuing the notice of deficiency and afford the DOL an opportunity to comment on the imposition of the tax, but they do not require that the notice of deficiency be based on a the DOL determination that the transaction was a prohibited transaction under section 4975(c)(1)(A).  In order to enforce the excise taxes under section 4975(a) and (b), respondent has the authority to determine whether a transaction is a prohibited transaction under section 4975(c)(1) and respondent duly exercised that authority in this case.  See Reorg. Plan sec. 102(a)(i) and (ii).

---

[13](...continued)
transaction.

H. Conf. Rept. 93-1280, at 295-296 (1974), 1974-3 C.B. 415, 456-457.

Effect of the Consent Judgment

Petitioner contends that the Consent Judgment was tantamount to a ruling, opinion, or exemption issued pursuant to authority that was delegated solely to the DOL under Reorganization Plan section 102. As a result, petitioner argues that the IRS "cannot come to a conclusion concerning a prohibited transaction contrary to a ruling previously made by the DOL."

Reorganization Plan section 102 gives the DOL the authority to issue "rulings, opinions, and exemptions". Reorganization Plan section 105 provides that in enforcing the excise tax provisions the IRS is bound, "to the extent applicable," by the regulations, rulings, opinions, and exemptions issued by the DOL as provided in Reorganization Plan sections 102 and 105.

In December 1991, the IRS notified the DOL about its intent to disqualify the Plan. At this time, the DOL was pursuing ERISA title I remedies against the Plan. In February 1993, petitioner (individually and as trustee of the Plan) and the estate of Mr. Cohen entered into the Consent Judgment with the DOL. Paragraph 10 of the Judgment specifically provides that "The obligations imposed by this Judgment are not binding on any Government agency other than the United States Department of Labor." In August 1994, respondent issued to petitioner a notice of deficiency determining an excise tax.

Petitioner states that the DOL concluded that a prohibited transaction had not occurred (a "non-violation" according to

petitioner).  However, the Consent Judgment contains no mention of the assignment of the accounts receivable.  Further, there is no evidence in the record regarding the degree of scrutiny of the DOL's investigation into the assignment.  The parties to the Consent Judgment agreed that the entry of the judgment was a final adjudication of all claims, obligations, penalties and remedies related to the allegations in the complaint, but they did not admit or deny any of the allegations.  We find that the DOL in the Consent Judgment did not rule on whether a prohibited transaction occurred.  Therefore, the IRS' position is not contrary to the DOL's position in the Consent Judgment.

Furthermore, the Consent Judgment expressly provided that it was not binding on any government agency other than the DOL.  By its terms, the Consent Judgment did not limit respondent's authority to determine excise tax deficiencies regarding the assignment of accounts receivable.  Thoburn v. Commissioner, 95 T.C. 132, 143 (1990).[14]

We hold that the Consent Judgment does not prevent respondent from determining an excise tax under section 4975(a) and (b) against petitioner.  As previously indicated, we sustain respondent's determination.

---

[14]  In Thoburn v. Commissioner, 95 T.C. 132, 143 (1990), the Court, in interpreting the DOL settlement at issue, noted that it was a contract, and its effect should be governed by the principles applicable to contracts.  Therefore, the Court looked to the objectively manifested intent of the parties.  Id.

To reflect respondent's concessions and our conclusions with respect to the disputed issues,

<u>Decision will be entered</u>

<u>under Rule 155</u>.