THOMAS O'MALLEY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15051-89.　　　　Filed April 15, 1991.

*Patrick J. Calihan* and *Edward J. Calihan, Jr.,* for the petitioner.

*James S. Stanis* and *Don M. Parkinson,* for the respondent.

HAMBLEN, *Judge:* Respondent determined deficiencies in excise tax against petitioner in the amounts of $13,314, $24,491, $24,491, and $24,491 for the taxable years 1981, 1982, 1983, and 1984, respectively. After concessions by respondent, the sole issue for decision is whether Thomas O'Malley (hereinafter petitioner) is subject to the excise tax imposed under section 4975(a)[1] for each of the taxable years at issue.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation, its two supplements, and their

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

attached exhibits are incorporated herein by this reference. The facts recited by this Court in *O'Malley v. Commissioner*, 91 T.C. 352, 353-358 (1988), are a substantially accurate outline of the background and actions of petitioner with respect to the years 1981 through 1984 and, to the extent applicable, are incorporated herein.

Petitioner resided in Mount Prospect, Illinois, when he filed his petition in this case.

During the years 1978 through 1982, petitioner was the director of industrial relations at C.W. Transport Co. (C.W.). C.W., a common carrier trucking company with headquarters in central Wisconsin, transported goods within the Midwest and Southeast regions.

From 1978 until December 20, 1982, petitioner also served as an employer trustee of the Central States, Southeast and Southwest Areas Health and Welfare Fund, and the Central States, Southeast and Southwest Areas Pension Fund (pension fund). The pension fund was a trust fund established to provide retirement and related benefits to members of the International Brotherhood of Teamsters (Teamsters) and was managed by a board of trustees (board) comprised of employer and employee trustees. At all times herein relevant, the pension fund was a trust described in section 401(a) which formed part of a plan, which plan and trust were exempt from tax under section 501(a). Further, the pension fund was a plan described in section 4975(e)(1) and, as such, should be afforded the protection of section 4975.

The pension fund was a multiemployer plan. Companies doing business anywhere in the Central States or Southeast or Southwest areas, contributed to the pension fund on behalf of their employees who were members of the Teamsters. Employer contributions were pooled rather than segregated into separate accounts. During the time petitioner served as trustee, C.W. contributed to the pension fund on behalf of approximately 1,800 covered employees.

As a full-time employee of C.W., petitioner received no monetary compensation from the pension fund, but the pension fund provided him with insurance coverage and other minor benefits. When petitioner became a trustee, however, he did receive an increase in salary from C.W.

On May 22, 1981, petitioner and four other individuals were indicted in the U.S. District Court for the Northern District of Illinois.[2] Count I of the indictment charged the defendants with conspiracy to bribe a U.S. Senator in violation of 18 U.S.C. section 371 (1982). Count II charged the defendants with causing petitioner, a trustee, and Amos Massa, a former trustee, to travel in interstate commerce to California, with the intent to promote the bribery, in violation of 18 U.S.C. section 1952 (1982). Counts III to XI charged the defendants with using interstate wires for the purpose of executing a scheme to defraud the pension fund of its "right to conscientious, loyal, faithful, disinterested, and unbiased services of THOMAS F. O'MALLEY and ANDREW G. MASSA, in the performance of acts related to their official duties, functions, and employment," in violation of 18 U.S.C. section 1343 (1982).

When informed of his indictment, petitioner spoke to George Lehr, the then executive director of the pension fund. Mr. Lehr recommended that petitioner contact an attorney named William Hundley and engage Mr. Hundley to represent petitioner. Petitioner immediately contacted Mr. Hundley regarding his representation by Mr. Hundley. Mr. Hundley, after speaking to the representatives of the pension fund, called petitioner back and agreed to represent petitioner. Mr. Hundley informed petitioner that every month he (Mr. Hundley) would send his bills for representing petitioner directly to the pension fund for payment.

Prior to the criminal trial, Andrew J. Decker and Execon, Inc., executive consultants, assisted in the preparation and presentation of petitioner's defense to the charges in the indictment. Prior to and during the criminal proceedings and on appeal, the law firm of Hundley & Cacheris, P.C., represented petitioner. Hundley & Cacheris, P.C., was located in Washington, D.C., and specialized in Federal criminal litigation. The total fees for the services provided for petitioner by Hundley & Cacheris, P.C., Andrew J. Decker, and Execon, Inc., were $266,280.55 in 1981 and $212,212.34 in 1982 and were paid for by the pension fund

---

[2]The case was captioned *United States v. Allen M. Dorfman, Roy L. Williams, Joseph Lombardo, Thomas F. O'Malley, and Andrew G. Massa, also known as Amos Massa,* 550 F. Supp. 877 (N.D. Ill. 1982).

in those amounts in those years. Petitioner knew that the bills for these legal fees were being submitted for payment to, and were being paid from time to time by, the board.

The pension fund's litigation defense costs policy was originally adopted by resolution at a meeting of the board on February 15, 1978. This litigation defense costs policy was based upon the following provisions of the trust agreement of the pension fund:

1. *Definition of Policy Coverage.* The Fund shall pay reasonable costs of defense, including reasonable attorneys' fees, on behalf of any Covered Person, in any civil litigation involving an alleged Covered Act or Omission by the Covered Person.

      \*       \*       \*       \*       \*       \*       \*

3. *Definition of Covered Persons.* As used herein, "Covered Person" means and includes any former or present Trustee of the Fund and any former or present officer or employee of the Fund.

4. *Definition of Covered Acts and Omissions.* As used herein, "Covered Act" and "Covered Omission" means and includes any alleged act and any alleged omission during the course of service by the Covered Person as a Trustee, officer, or employee of the Fund (except for Exclusions described in this Policy).

SEC. 6. EXPENSES—All proper and necessary expenses incurred by any former or incumbent Trustee, including costs of defense in litigation arising out of the Trusteeship of this Fund, and also including costs incurred by any former or incumbent Trustee in providing testimony or information about administration of this Fund in any investigation, trial or other proceeding, shall be paid out of the Trust Fund, as a matter of right of any such former or incumbent Trustee, to the extent permitted by applicable law. As used in the preceding sentence, the term "costs" includes but is not limited to reasonable attorneys' fees.

Under the litigation defense costs policy adopted at this meeting on February 15, 1978, the pension fund would pay costs of defense, including reasonable attorneys' fees, on behalf of present or former trustees, officers, or employees of the pension fund. The policy coverage applied only to costs of defense in civil litigation involving alleged acts or omissions during the course of service of the trustee, officer, or employee.

As a condition of the policy coverage, the pension fund was to be subrogated to the right of recovery of the covered trustee, officer, or employee against any person or entity for the amounts the pension fund paid on his behalf.

At a meeting held on June 4 through 6, 1981, the board granted petitioner's request that the pension fund pay his legal expenses and accordingly adopted a resolution authorizing the present and future indemnification of reasonable defense costs, including reasonable attorney's fees, incurred by petitioner before and during the trial relating to the criminal indictment. Petitioner abstained from the vote.

At its meeting on October 20 through 21, 1981, the board adopted a new litigation defense cost policy for the pension fund, effective retroactively. This new defense cost policy was substantially identical to the prior policy except that it covered both civil and criminal litigation defense costs. Again, petitioner abstained from the vote.

At a meeting on August 17 through 18, 1982, the board resolved that the pension fund would not pay any additional attorneys' fees and other defense costs in the criminal case on behalf of any trustees of the pension fund, without specific authorization by the board after written notice had been given to the Department of Labor. The pension fund made no additional payments for petitioner's defense costs after the August 17 through 18, 1982, meeting of the board.

On or about December 16, 1982, after a 10-week jury trial, petitioner was convicted on all counts of the indictment and sentenced to a prison term of 30 months. Petitioner filed a notice of appeal with the Court of Appeals for the Seventh Circuit. His conviction was affirmed on June 8, 1984.[3] As a result of petitioner's conviction, he was prohibited from working in labor relations for 13 years.

The pension fund subsequently was reimbursed for the litigation expenses paid on behalf of petitioner by two insurance companies, National Union Fire Insurance Co. of Pittsburgh, Pennsylvania, and Midland Insurance Co. C.W. was not requested to, nor did it, make any payment of any portion of petitioner's legal fees.

In a previous case before this Court,[4] respondent determined that the pension fund payments of petitioner's legal costs associated with his criminal defense were personal to petitioner and, as such, were income to him. We agreed that

[3] *United States v. Williams,* 737 F.2d 594 (7th Cir. 1984).
[4] *O'Malley v. Commissioner,* 91 T.C. 352 (1988).

petitioner's acts were personal and not taken in his fiduciary capacity on behalf of the pension fund.

OPINION

This case involves the payment of legal fees by the plan on behalf of petitioner. In an earlier decision of this Court, we decided that the payment of legal fees was personal to petitioner and, as such, income.[5] We further decided that the payment of legal fees brought about a deduction to petitioner. We now address the issue of whether petitioner is subject to the excise tax under section 4975(a) because the pension plan paid expenses, personal in nature, on his behalf.

Section 4975(a) imposes on "prohibited transactions" an annual 5-percent tax on the amount involved for each "prohibited transaction" (the first-tier tax). The tax imposed is to be paid by any "disqualified person" who "participates" in the "prohibited transaction." Sec. 4975(a). Section 4975(c)(1)(D) defines, in part, a "prohibited transaction" as any direct or indirect transfer of plan income or assets to a "disqualified person" or the use of plan income or assets by or for any "disqualified person." Section 4975(c)(1)(E) further defines a "prohibited transaction" as any act whereby a "disqualified person" who is a fiduciary deals with the income or assets of a plan for his own interest or for his own account. A "disqualified person" is defined under section 4975(e)(2)(A) and (H) as a fiduciary of the plan or an officer or director, or an individual having power or responsibilities similar to those of officers or directors, of an employer whose employees are covered under the plan.

After concessions, respondent determined deficiencies in excise tax under section 4975(a) in petitioner's returns for each of the taxable years at issue.[6] Petitioner admits he is a disqualified person for purposes of section 4975, that the pension fund is a plan covered by section 4975, and that the

---

[5]Since we have previously held petitioner's legal expenses to be personal in nature, petitioner is estopped from now arguing that the legal fees were incurred in his capacity as fiduciary of the pension plan. See *O'Malley v. Commissioner,* 91 T.C. 352 (1988).

[6]Respondent treated the payment of the legal fees to the pension fund by the insurance companies as constituting "correction" in this case. Therefore, respondent is not asserting the second-tier excise tax under sec. 4975(b) against petitioner for any of the years at issue.

exemptions to section 4975 under section 4975(d) do not apply in this case. Further, petitioner does not contest that the payment of his legal fees by the pension plan constitutes a prohibited transaction. Petitioner's sole argument against the determined deficiencies in excise tax is that he did not participate in the prohibited transaction, as required to be subject to the section 4975(a) excise tax.

Based on petitioner's above admissions, the only issue before us is the scope of "participation" in section 4975. Petitioner claims that he did not participate since he did not hire Mr. Hundley to represent him and he did not vote on the plan's initial decision, or its future approvals, to pay his legal costs. Instead, petitioner argues that the trustees that voted to pay his criminal legal defense costs are the parties that should be subject to the excise tax imposed under section 4975.

The determination of what constitutes participation depends upon the allowable scope of reimbursement and indemnification of fiduciaries for litigation expenses under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829. The legislative history of ERISA clearly indicates that the fiduciary standards under ERISA are to be no less stringent than, and given congressional intent to safeguard the assets of employee benefit plans, are to be more stringent than fiduciary standards applied in traditional trust law. See, e.g., H. Rept. 93-533 (Conf.) at 12-13 (1973), 1974-3 C.B. 210, 221-222 and H. Rept. 93-1280 (Conf.) at 306-307 (1974), 1974-3 C.B. 415, 467-468. Further, courts have recognized that ERISA's requirements are more stringent than those of the common law of trusts when dealing with employee benefit trust funds. See *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570 (1985); *Donovan v. Mazzola,* 716 F.2d 1226, 1231 (9th Cir. 1983).

The basis for the liability of a disqualified person for the excise tax under section 4975(a) and (b), i.e., participation, is not the same as the basis for liability of a fiduciary under section 406(a), ERISA. See, e.g., H. Rept. 93-1280 (Conf.) at 306-307 (1974), 1974-3 C.B. 415, 467-468. A fiduciary is liable under section 406(a), ERISA, if he or she knowingly

caused the plan to engage in a transaction which is described in section 406(a)(1), ERISA. Liability under that section is predicated upon a fiduciary's act on behalf of the plan which causes the plan to enter into the transaction and not upon the fiduciary's participation in the transaction itself.

The basis for liability under section 4975(a) and (b) differs from the basis for liability under section 406(a), ERISA. Under section 4975(a) and (b), a disqualified person is liable for the excise tax if he or she participates in the transaction. Participation in section 4975 occurs any time a disqualified person is involved in a transaction in a capacity *other than* as a fiduciary acting only as such. See sec. 4975(a); see also sec. 53.4941(a)-1(a)(3), Excise Tax Regs. Further, a fiduciary who violated section 406(a), ERISA, is liable only if he or she possessed or should have possessed the requisite knowledge. In contrast, those that participate in a section 4975 prohibited transaction are liable for the excise tax notwithstanding the fact that they may have acted innocently or in good faith or otherwise did not know or understand the nature of the transaction. *Rutland v. Commissioner,* 89 T.C. 1137 (1987); *Lieb v. Commissioner,* 88 T.C. 1474 (1987).

While petitioner may not have acted as a representative or on behalf of the pension plan by approving the payment of his fees, he nonetheless participated in the transaction, for purposes of section 4975, by being the recipient of the benefit bestowed by the transaction. Therefore, for purposes of section 4975, a disqualified person does not need to play a role on both sides of a transaction. In other words, a disqualified person does not need to approve a prohibited transaction as a fiduciary and benefit from it in order to violate section 4975. Instead, if a disqualified person participates by approving a prohibited transaction *or* participates by receiving the benefit of a prohibited transaction, the disqualified person is subject to the section 4975(a) excise tax.

This definition of participation is consistent with several other transactions involving the plan on one side and the disqualified person on the other. Section 4975(c)(1)(A) sets forth that a transaction involving a plan, participating as a

seller, and a disqualified person, participating as a buyer, is a prohibited transaction. Section 4975(c)(1)(B) establishes loans between a plan and a disqualified person as prohibited transactions. Finally, section 4975(c)(1)(D) sets forth that transactions where a plan transfers plan assets or income to a disqualified person for the disqualified person's personal use are prohibited.

This definition of participation is also consistent with section 4975(a). Section 4975(a) states that "the tax imposed by this subsection shall be paid by any disqualified person who participates in the prohibited transaction (other than as a fiduciary acting only as such)." Petitioner was a participant in the transaction since he received the funds from the plan and he did not act as a fiduciary in accepting the funds. Therefore, it is consistent with section 4975(a), other examples within section 4975, and the legislative history and intent behind section 4975[7] to find petitioner participated in a prohibited transaction when he accepted the payment of personal legal fees even though he may not have actually voted, as trustee, on the transaction.

Based on the above analysis, we find, for purposes of section 4975, that petitioner participated in a prohibited transaction when he received the benefit of pension fund assets. We so hold, notwithstanding the fact that petitioner did not, as trustee for the pension fund, vote to bestow the benefits upon himself. Therefore, petitioner is subject to the section 4975(a) excise tax.

Due to concessions,

*Decision will be entered under Rule 155.*

---

[7]See, e.g., H. Rept. 93-533 (Conf.) at 12-13 (1973), 1974-3 C.B. 210, 221-222 and H. Rept. 93-1280 (Conf.) at 306-307 (1974), 1974-3 C.B. 415, 467-468.