T.C. Memo. 1999-80


UNITED STATES TAX COURT


EDWARD CLASBY AND C.T. GARRAHAN INSURANCE AGENCY, INC.,
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1616-97.                    Filed March 16, 1999.


<u>Paul F. Markham</u>, for petitioners.

<u>Mark L. Hulse</u> and <u>Gary W. Bornholdt</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined that petitioners are liable for deficiencies in the excise tax imposed on prohibited transactions between retirement plans and disqualified persons by section 4975(a) and (b) and additions to tax as follows:

|  | Deficiencies | | Additions to tax | |
| --- | --- | --- | --- | --- |
|  | Sec. | Sec. | Sec. | Sec. |
| <u>Year</u> | <u>4975(a)</u> | <u>4975(b)</u> | <u>6651(a)(1)</u> | <u>6651(a)(2)</u> |
| 1982 | $14,693 | -0- | $3,306 | $3,673 |
| 1983 | 16,777 | -0- | 3,775 | 4,194 |
| 1984 | 30,969 | -0- | 6,968 | 7,742 |

| 1985 | 32,156 | -0- | 7,235 | 8,039 |
| 1986 | 33,288 | -0- | 7,490 | 8,322 |
| 1987 | 34,355 | -0- | 7,730 | 8,589 |
| 1988 | 35,374 | -0- | 7,959 | 8,844 |
| 1989 | 35,374 | -0- | 7,959 | 8,844 |
| 1990 | 35,374 | -0- | 7,959 | 6,721 |
| 1991 | 35,374 | -0- | 7,959 | 4,599 |
| 1992 | 35,374 | -0- | 7,959 | 2,476 |
| 1993 | 21,624 | $707,488 | 65,620 | 7,291 |

After concessions, the issues for decision are:

1.   Whether petitioners are disqualified persons as described in section 4975(e)(2).  We hold that they are, and that they are jointly and severally liable for the 5-percent excise tax on prohibited transactions under section 4975(a) for 1982 to 1993.

2.   Whether petitioners are liable for additions to tax under section 6651(a)(1) for 1982 to 1993.  We hold that they are to the extent discussed below.

At trial, respondent conceded that petitioners are not liable for the 100-percent excise tax under section 4975(b) for 1993 or the additions to tax under section 6651(a)(2) for 1982 to 1993.  Respondent also conceded that the addition to tax under section 6651(a)(1) for 1993 does not exceed $7,959.

References to petitioner are to Edward Clasby.  References to the Garrahan Agency are to the C.T. Garrahan Insurance Agency, Inc.  Section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

## I.  FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.   Petitioner Clasby

Petitioner lived in Framingham, Massachusetts, when he filed his petition in this case.

Petitioner graduated from Boston College.  He was quarterback of the football team and is a member of the Boston College Hall of Fame.  After college, he taught at a preparatory school in Massachusetts for 2 years.  In 1952, he obtained a master's degree in biology from Boston College.  He coached football at Boston College while attending graduate school.  He then attended Harvard Business School for 1 year.

Petitioner married Mary Garrahan in 1953.  He worked for the Travelers Insurance Co. (Travelers) from around 1954 to 1960 or 1961.  He left Travelers to work for the C.T. Garrahan Insurance Agency, Inc. (the Garrahan Agency), which was owned by his father-in-law.

B.  Petitioner Garrahan Agency

The Garrahan Agency is a Massachusetts corporation the principal place of business of which was in Framingham, Massachusetts, during the years in issue and when it filed its petition in this case.  The Garrahan Agency sold insurance to individuals and businesses.

Petitioner was president of the Garrahan Agency during the years at issue.  Petitioner was a licensed insurance broker for the Garrahan Agency.  He solicited and acquired casualty insurance business.  Petitioner and his wife each received a salary from the Garrahan Agency from 1982 to 1988.  During the

years in issue, petitioner owned a one-third interest, his wife owned a one-third interest, and they jointly owned a one-third interest in the Garrahan Agency.

Travelers authorized the Garrahan Agency to solicit applications or proposals for insurance on behalf of Travelers in 1969. Travelers authorized the Garrahan Agency to solicit life insurance contracts for Travelers during the years in issue.

C.  Framingham Union Hospital, Inc.

During the years in issue, Framingham Union Hospital, Inc. (FUH), was a not-for-profit hospital in Framingham, Massachusetts. Petitioner's father-in-law had been involved with hospital activities since the 1940's or 1950's.

Petitioner began his association with FUH in the late 1960's or early 1970's at the encouragement of his father-in-law. Petitioner initially helped FUH with fundraising. He became a member of the executive committee of FUH in the early 1970's. Petitioner was a vice president of FUH from 1979 to 1982. In 1982, he was a member of FUH's board of trustees, executive committee, and finance committee.

The board of trustees made policy for FUH, and the executive committee implemented it. FUH had 18 to 22 trustees in 1981-82. Salaried officers of FUH reported to its executive committee and attended executive committee meetings. FUH committees reported to the executive committee. James Walckner (Walckner) was chief executive officer and executive vice president of FUH when petitioner became a trustee.

Petitioner was elected president of FUH in 1983 and began reporting to the board of trustees.  As president of FUH, petitioner became a member of each FUH committee, including the pension committee.  Petitioner was president or vice president, a trustee, and a member of the executive committee of FUH from 1982 to 1988.

D.    The FUH Retirement Plan

    1.    FUH Pension Plan

During the years at issue, FUH maintained a qualified pension plan for its employees (the FUH plan).  The FUH plan was administered by the FUH pension committee, which consisted of members of the board of trustees of FUH and the FUH administration.

    2.    Use of Life Insurance To Fund the FUH Plan

In 1981, petitioner and Glenn Talbot (Talbot), then chief financial officer of FUH and a member of its pension committee, discussed an alternative program for funding the FUH plan.  Under the program, the plan would buy insurance policies on the lives of FUH employees and the plan would be named the beneficiary.

David Player (Player) had been an insurance agent for Connecticut Mutual Life Insurance Co. since 1976.  Player first heard of the concept of a pension plan buying life insurance on its participants from petitioner.

Edgar Murray III (Murray) was a representative of Travelers. From January to June 1982, Murray and the pension committee met several times to discuss the program.  Petitioner introduced

Player to Murray in the spring of 1982.

Andrew Fantasia (Fantasia) was the certified public accountant for the FUH plan. In 1982, on the basis of conversations between petitioner and Murray, Fantasia promoted the program to FUH. In the summer of 1982, petitioner asked Fantasia to do preliminary tax research regarding the program.

3.   The July 15, 1982, Presentation to FUH

On July 15, 1982, Murray, Player, and Fantasia presented to the FUH pension committee a proposal to invest FUH plan assets in the program. Petitioner did not attend the July 15 presentation because he wanted to avoid the appearance of a conflict of interest. However, petitioner frequently met with Murray and Player at petitioner's offices to discuss the July 15 presentation.

Petitioner helped to prepare a document describing the program dated July 15, 1982, which was given to FUH at the July 15 presentation. The document contained information that was discussed in the meetings with petitioner, Murray, and Player. Petitioner did not discuss the document with any representative of FUH.

After the July 15, 1982, presentation, Player and petitioner had many meetings at the Garrahan Agency to discuss the program. Murray attended some of these meetings. Player used the Garrahan Agency's letterhead in correspondence sent to FUH about the program. Petitioner did not tell Walckner or Talbot that he met with Murray and Player before and after the July 15 presentation.

In July 1982, Murray told petitioner that the Garrahan Agency would receive commissions because FUH approved the program. Petitioner was not surprised that the Garrahan Agency was to receive the commissions.

4. <u>Investment in the Program by the FUH Plan</u>

On July 21, 1982, Walckner sent a memorandum to the FUH finance committee, of which petitioner was a member, endorsing the program.

FUH bought whole life insurance from Travelers for about 147 participants in the FUH plan. FUH was named as the beneficiary. On September 15, 1982, FUH assigned the insurance policies to the FUH plan.

The Garrahan Agency signed the applications and underwrote (i.e., assumed the risk of) and issued the policies for the Travelers whole life insurance contracts purchased for the FUH plan participants. Petitioner signed the FUH plan's insurance policies; i.e., he accepted the policies for FUH.

In 1984, the FUH plan converted its insurance policies from whole life to universal life insurance. The Garrahan Agency serviced and processed the universal life insurance contracts with the FUH plan participants and received additional commissions after the FUH plan converted its insurance policies.

5. FUH's Payments to Travelers for the Life Insurance
   Policies

The FUH pension committee paid the following amounts to
Travelers for the whole life insurance policies:

| Date | Payments |
|------|----------|
| 8/20/82 | $100,000 |
| 9/15/82 | 440,000 |
| 2/2/83 | 11,161 |

The FUH plan paid Travelers the following amounts for
renewal premiums:

| Date | Premiums |
|------|----------|
| 9/6/83 | $549,699 |
| 7/23/84 | 556,843 |
| 9/6/85 | 554,390 |
| 8/26/86 | 554,390 |
| 8/28/87 | 530,650 |
| 8/31/88 | 526,325 |

6. Commissions Paid by Travelers to the Garrahan Agency

During the years at issue, the Garrahan Agency received the
following amounts as commissions from Travelers for the purchase
by the FUH plan of life insurance contracts:

| Year | Commissions |
|------|-------------|
| 1982 | $293,852 |
| 1983 | 41,682 |
| 1984 | 283,849 |
| 1985 | 23,740 |
| 1986 | 22,640 |
| 1987 | 21,337 |
| 1988 | 20,388 |
| Total | 707,488 |

Player received about $70,000-$72,000 in 1982-83 from
petitioner and the Garrahan Agency for his role in promoting the
program to FUH.

E.   Petitioner's Activities as FUH President and FUH Plan Trustee

As president of FUH from 1983 to 1988, petitioner presided over meetings of the executive committee at which it approved revisions to the FUH plan.  These meetings included:  (1) July 25, 1983, March 11, 1985, and October 28, 1985, at which the committee approved the FUH plan; and (2) July 23, 1984, at which the committee agreed to use $225,000 received from Travelers for the first death under the plan to buy six or seven additional policies.

As FUH president, petitioner signed various FUH plan documents and documents on behalf of the plan, such as:  (1) The FUH pension trust agreement[1] on July 14, 1983; (2) an amendment to the FUH plan effective January 1, 1984; (3) a Form 2848, Power of Attorney and Declaration of Representative, authorizing Fantasia to represent FUH before the Internal Revenue Service (IRS) for tax matters relating to the FUH plan on May 25, 1984; (4) an amendment to the FUH plan effective January 1, 1985; and (5) a revision of the FUH plan on March 12, 1985.

Petitioner became president of the FUH pension committee in 1983.  As a member of the pension committee, he was also a plan trustee.  He resigned from the pension committee in September 1983 because the Garrahan Agency was writing insurance policies for the FUH plan.  Petitioner chose Robert Simmler to replace him

---

[1] Petitioner also signed the FUH pension trust agreement in his capacity as FUH plan trustee.

on the committee.

Neither petitioner nor the Garrahan Agency filed a Form 5330, Return of Excise Tax Related to Employee Benefit Plans, for any of the years at issue.

F.   Notices of Deficiency

Respondent issued notices of deficiency determining that petitioners are liable for excise tax deficiencies under section 4975(a) and (b) and additions to tax under section 6651(a)(1) for 1982 through 1993.  Respondent determined that petitioners were "disqualified persons" and that they had participated in prohibited transactions under section 4975(c).

II.   OPINION

A.   Excise Tax on Prohibited Transactions

Section 4975(a) imposes an excise tax on prohibited transactions between retirement plans and disqualified persons. Section 4975(a) imposes a 5-percent tax on the amount involved, as defined by section 4975(f)(4), for each prohibited transaction.  Any disqualified person who participates in a prohibited transaction is liable for the tax.  Sec. 4975(a).  A

disqualified person[2] includes an owner of 50 percent or more

---

[2] Sec. 4975(e) provides:

SEC. 4975(e).  Definitions.--

      *    *    *    *    *    *    *

    (2)  Disqualified person.--For purposes of this section, the term "disqualified person" means a person who is--

        (A)  a fiduciary;

        (B)  a person providing services to the plan;

        (C)  an employer any of whose employees are covered by the plan;

        (D)  an employee organization any of whose members are covered by the plan;

        (E)  an owner, direct or indirect, of 50 percent or more of--

            (i)  the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation,

            (ii)  the capital interest or the profits interest of a partnership, or

            (iii)  the beneficial interest of a trust or unincorporated enterprise, which is an employer or an employee organization described in subparagraph (C) or (D);

      *    *    *    *    *    *    *

        (G)  a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of--

            (i) the combined voting power of

(continued...)

of the stock of a corporation which is an employer any of whose employees are covered by the plan.  Sec. 4975(e)(2)(C), (E).

Petitioners contend that they were not disqualified persons and did not engage in prohibited transactions.

B.    Whether Petitioner Was a Disqualified Person

Petitioner is a disqualified person if he was a fiduciary of the FUH plan, section 4975(e)(2)(A), or if he was an officer or director of FUH, or person having similar powers.  Sec. 4975(e)(2)(H).

1.    Whether Petitioner Was a Fiduciary of the FUH Plan

Petitioner argues that he was not a fiduciary of the FUH plan under section 4975(e)(2)(A), and thus was not a disqualified person, because he did not exercise discretionary authority or

---

[2](...continued)
            all classes of stock entitled to vote
            or the total value of shares of all
            classes of stock of such corporation,

                (ii) the capital interest or
            profits interest of such partnership, or

                (iii) the beneficial interest of such
            trust or estate,

        is owned directly or indirectly, or held by
        persons described in subparagraph (A), (B), (C),
        (D), or (E);

            (H)  an officer, director (or an
        individual having powers or
        responsibilities similar to those of
        officers or directors), a 10 percent or
        more shareholder, or a highly compensated
        employee (earning 10 percent or more of
        the yearly wages of an employer) of a
        person described in subparagraph (C), (D),
        (E), or (G); * * *

control regarding the management or disposition of FUH plan assets and because his involvement in the daily operations of FUH was minimal.  Petitioner points out that he resigned from the pension committee shortly after it was formed and argues that the committee had exclusive authority and control over the FUH plan.

We disagree.  Petitioner had discretionary authority and control over the management of the FUH plan, over the disposition of FUH plan assets, and in the administration of the FUH plan when the prohibited transactions occurred; he need not have exercised that authority to be a fiduciary of the FUH plan.  Sec. 4975(e)(3)(A), (C).

During the years at issue, petitioner was at various times vice president or president of FUH, a member of the executive and finance committees of FUH, a trustee of the FUH plan, and, briefly, president of the pension committee of FUH.  The pension committee reported directly to the executive committee when FUH decided to invest plan assets in the program.  He was also a member of the finance committee when, on July 21, 1982, Walckner sent a memorandum to members of that committee advising them that, unless they opposed the program within 10 days, the FUH plan would go ahead with the investment in the program. Petitioner thus had a direct role in deciding whether FUH would adopt the program.  He exercised discretionary authority and control regarding management of the FUH plan or disposition of its assets.  Sec. 4975(e)(3)(A).

Petitioner exercised authority over the FUH plan.  As

president of FUH, petitioner presided over four meetings of the
executive committee of FUH where the committee approved revisions
to the FUH plan and agreed to use FUH plan assets to buy
additional policies under the program.  From 1983 to 1985, as
president of FUH, petitioner signed various FUH plan documents,
including the FUH plan pension trust agreement,[3] several
amendments to the FUH plan, a revision of the FUH plan, and a
Form 2848 authorizing Fantasia to represent FUH before the IRS
for tax matters relating to the FUH plan.

Petitioner was a fiduciary of the FUH plan because he
exercised discretionary authority and control regarding the
management of the FUH plan and the management and disposition of
its assets.  Sec. 4975(e)(3)(A).[4]

2.    Whether Petitioner Was an Officer or Director or
      Individual Having Similar Powers

Petitioner argues that he is not a disqualified person under
section 4975(e)(2)(H) because, as president of FUH, he did not
have or exercise powers or responsibilities similar to those of

---

[3] Petitioner also signed the FUH plan pension trust
agreement as a trustee of the FUH plan.

[4] Sec. 4975(e)(3)(A) provides:

> (3) Fiduciary.  For purposes of this section,
> the term "fiduciary" means any person who--
>
> > (A) exercises any
> > discretionary authority or
> > discretionary control respecting
> > management of such plan or
> > exercises any authority or control
> > respecting management or
> > disposition of its assets,

an officer or director.  We disagree.

Any individual who is an officer or director (or any individual who has powers or responsibilities similar to those of officers or directors) of an employer any of whose employees are covered by the plan is a disqualified person.  Sec. 4975(e)(2)(H); Rutland v. Commissioner, 89 T.C. 1137, 1144 (1987).  Petitioner was vice president of FUH and a member of its board of trustees and its executive committee from 1981 to July 1982, when FUH bought the insurance policies from Travelers, and was an officer of FUH from 1982 to 1988.  See, e.g., Zabolotny v. Commissioner, 97 T.C. 385, 392 (1991) (the taxpayer was a disqualified person under section 4975(e)(2)(H) because he was an officer of the corporation whose employees participated in the plan), affd. in part and revd. in part on another ground 7 F.3d 774 (8th Cir. 1993); Kadivar v. Commissioner, T.C. Memo. 1989-404 (the taxpayer was held to be a disqualified person under section 4975(e)(2)(H) because he was the president of the corporation sponsoring the plan).

Petitioners argue that a person's actions, and not his or her job title, determine whether that person is a fiduciary or other disqualified person under section 4975.  Petitioners rely on two District Court cases involving petitioners and others at FUH.  In Framingham Union Hosp., Inc. v. Travelers Ins. Co., 721 F. Supp. 1478 (D. Mass. 1989), FUH alleged that Walckner, petitioner, the Garrahan Agency, and others violated the prohibitions of the Employee Retirement Income Security Act of

1974 (ERISA), Pub. L. 93-406, sec. 3, 88 Stat. 833, 29 U.S.C. section 1109(a), against self-dealing by fiduciaries. The complaint against Walckner for breach of fiduciary duties was dismissed because it contained no factual allegations that he was a fiduciary. The District Court made no finding as to Walckner's status as a fiduciary; rather, it noted that the complaint alleged no facts to support the assertion that Walckner possessed or exercised fiduciary powers. Id. at 1488. The complaints against petitioner and the Garrahan Agency for breach of fiduciary duty were not dismissed. The District Court held that FUH and the FUH plan could sue petitioner and the Garrahan Agency, among others, under ERISA for breach of fiduciary duty. Petitioners rely on this case to show that petitioner was not a disqualified person. We disagree. Walckner's relationship to the FUH plan is irrelevant here. Petitioner was a fiduciary within the meaning of section 4975(e)(2)(A) because he exercised authority and control regarding management of the FUH plan or disposition of its assets. Further, as an officer of FUH and trustee of the FUH plan, petitioner was a disqualified person under section 4975(e)(2)(H).

In Framingham Union Hosp., Inc. v. Travelers Ins. Co., 744 F. Supp. 29, 31-32 (D. Mass. 1990), the Secretary of Labor alleged that petitioner and the Garrahan Agency knowingly participated in prohibited transactions and other breaches of fiduciary duty. The complaint was dismissed because it did not allege that petitioner or the Garrahan Agency was a fiduciary.

The District Court held that nonfiduciaries are not liable for knowingly participating in a breach of fiduciary duty. Id. at 33. Petitioners' reliance on that case is misplaced because the basis for liability of a disqualified person for the section 4975 excise tax differs from the basis for liability of a fiduciary under ERISA section 406(a), 88 Stat. 879. See O'Malley v. Commissioner, 96 T.C. 644, 650-651 (1991), affd. 972 F.2d 150 (7th Cir. 1992). A fiduciary is liable under ERISA section 406(a) if he or she knowingly caused the plan to engage in a transaction described in ERISA section 406(a)(1). A fiduciary need not participate in the transaction to be liable under ERISA section 406(a). In contrast, a disqualified person is liable for the section 4975(a) excise tax if he or she participates in the transaction even if that person may have acted innocently or in good faith or otherwise did not know or understand the nature of the transaction. O'Malley v. Commissioner, supra at 651; Rutland v. Commissioner, 89 T.C. 1137 (1987). We have found above at paragraphs II-B-1 and II-B-2 that petitioner was a disqualified person because he participated in a prohibited transaction.

### 3. Conclusion

We conclude that petitioner was a disqualified person under section 4975(e)(2), and that he is liable for the 5-percent excise tax imposed by section 4975(a).

### C. Whether the Garrahan Agency Was a Disqualified Person

The Garrahan Agency is a disqualified person if it provided services to the plan, section 4975(e)(2)(B), or if 50 percent or

more of its voting stock was owned directly or indirectly by persons described in section 4975(e)(2)(A), (B), (C), (D), or (E).  Sec. 4975(e)(2)(G).

1.  Whether the Garrahan Agency Provided Services to the Plan

Petitioners contend that the Garrahan Agency was not a disqualified person under section 4975(e)(2)(B) because it did not provide services to the plan.  Petitioners claim that Travelers provided services to the plan.  We disagree.  The Garrahan Agency serviced and processed the life insurance policies purchased by the FUH plan.  The Garrahan Agency is thus a disqualified person under section 4975(e)(2)(B).

2.  Whether Petitioner Owned 50 Percent or More of the Garrahan Agency

Petitioners argue that the Garrahan Agency is not a disqualified person under section 4975(e)(2)(G) because 50 percent or more of its voting stock was not owned by a disqualified person described in section 4975(e)(2)(A), (B), (C), (D), or (E).  We disagree.

A disqualified person includes any corporation 50 percent or more of which is owned directly or indirectly by persons described in section 4975(e)(2)(A), (B), (C), (D), or (E).  Sec. 4975(e)(2)(G).  For purposes of section 4975(e)(2)(G)(i), an individual is deemed to own stock owned directly or indirectly by or for his family.  Secs. 267(c), 4975(e)(4).  For purposes of section 4975(e)(4), the term "family" includes the individual's spouse.  Sec. 4975(e)(6).  Thus, any interest in the Garrahan

Agency owned by petitioner's wife is attributed to petitioner for purposes of section 4975(e)(2)(G).  Since petitioner and his wife owned 100 percent of the Garrahan Agency, and since petitioner is a disqualified person under section 4975(e)(2)(A), the Garrahan Agency is a disqualified person under section 4975(e)(2)(G).

3.  Conclusion

The Garrahan Agency is a disqualified person under section 4975(e)(2), and thus it and petitioner are jointly and severally liable for the 5-percent excise tax imposed by section 4975(a).[5]

D.  Whether Petitioners Are Liable for Additions to Tax Under Section 6651(a)(1)

Disqualified persons liable for the tax under section 4975(a) must file an annual return on Form 5330 for each prohibited transaction.  Sec. 6011; sec. 54.6011-1(b), Pension Excise Tax Regs.  Neither petitioner filed Forms 5330 for the years at issue.  Petitioners' failure to file Forms 5330 renders each petitioner liable for the addition to tax under section 6651.  See Janpol v. Commissioner, 102 T.C. 499, 500 (1994).

Petitioners do not contend that they are not liable for the additions to tax under section 6651(a)(1).  We treat this as petitioners' concession of this issue.  See Rothstein v. Commissioner, 90 T.C. 488, 497 (1988).  Respondent concedes that

---

[5] Petitioner stated at trial that he and the Garrahan Agency had paid $345,000 to settle a civil suit brought in the U.S. District Court in Boston against petitioners and others by the Department of Labor, FUH, and the FUH plan.  Petitioners did not argue in their posttrial brief that this affects their liability for tax under sec. 4975(a).

petitioners are not liable for the additions to tax under section 6651(a)(2) and that the addition to tax under section 6651(a)(1) for 1993 is not larger than $7,959.  We sustain respondent's determination that petitioners are liable for additions to tax under section 6651(a)(1), except as conceded by respondent.

<u>Decision will be entered</u>

<u>under Rule 155</u>.