T.C. Memo. 2004-130


UNITED STATES TAX COURT


RALF ZACKY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3539-02.                    Filed May 27, 2004.


Ralph G. Zacky, pro se.

<u>Laura Beth Salant</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioner petitioned the Court to redetermine respondent's determination that petitioner is liable for the following deficiencies in Federal excise tax and additions thereto:

| Year | First-tier (initial) deficiency Sec. 4975(a) | Second-tier (additional) deficiency Sec. 4975(b) | Addition to tax Sec. 6651(a)(1) |
|------|------|------|------|
| 1996 | $1,016 | -- | $254.00 |
| 1997 | 3,252 | -- | 813.00 |
| 1998 | 6,941 | -- | 1,735.25 |
| 1999 | 10,999 | -- | 2,749.75 |
| 2000 | 15,463 | -- | 3,865.75 |
| 2001 | -- | $124,079 | 12,398.00 |

We decide whether petitioner is liable for these amounts. We hold he is. Unless otherwise stated, section references are to the applicable versions of the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some facts were stipulated. We incorporate herein by this reference the parties' stipulation of facts and the exhibits submitted therewith. We find the stipulated facts accordingly. Petitioner resided in Mentone, California, when his petition was filed.

Aspects, Inc. (Aspects), is a C corporation of which petitioner is the president and sole shareholder. It has a profit sharing plan (plan) that was adopted effective December 1, 1983, and was amended on April 20, 1991. The plan is qualified under section 401(a). The plan's underlying trust is exempt from Federal tax under section 501(a).

From the inception of the plan through November 7, 2001, the date on which the notice of deficiency was issued in this case, the plan has had many participants. One of these participants was petitioner. Petitioner also was the plan's sole trustee.

Pursuant to the plan, the trustee was required to provide the plan with services which included (1) investing, managing, and controlling plan assets, (2) maintaining records of plan receipts and disbursements and preparing a written annual report, (3) borrowing and raising funds for the plan, and (4) making loans from the plan to plan participants. From the inception of the plan through November 7, 2001, petitioner has had access to the plan's books, records, and assets.

As of March 28, 1990, neither Aspects nor petitioner had the funds necessary to pay Aspects's payroll liability of $40,000, which was imminently coming due. Petitioner on that date borrowed $40,000 from the plan (first loan) to pay that liability. The first loan was supported by a promissory note signed by petitioner and dated March 28, 1990. The note stated that interest of 12 percent per annum would accrue on the unpaid principal and that repayment would be made over 5 years through quarterly installments of $2,688.63 beginning on June 28, 1990. The note stated that the first loan was secured by petitioner's vested interest in the plan. The balance of that interest was $112,000 on March 28, 1990, and $104,106.42 on April 1, 1994.

Inland Empire Properties, Inc. (Inland), was a licensed California corporation from June 17, 1992, until March 1, 2000. Its business during that time was the ownership and leasing to Aspects and other tenants of a commercial building. Inland's

president and sole shareholder was petitioner, and it had no employees. On May 20, 1992, the plan lent $10,527.84 to Inland (second loan) so that petitioner could pay off his car loan, which was about to go into default. An unsigned document drafted on Aspects stationery and bearing the typewritten name of petitioner stated that the second loan was due in 1 year, that the interest rate payable on the second loan was 6.4 percent, and that the second loan was secured by a 1989 Pontiac Bonneville SSE bearing a stated vehicle identification number. The document also stated that the second loan was renewable after the first year at the then-prevailing interest rate plus 3 percent. Shortly after the making of the second loan, petitioner transferred to Inland the title to the referenced 1989 Pontiac Bonneville SSE.

On March 1, 1993, the plan lent $94,294.89 to Inland (third loan) so that Inland could pay the mortgage and real estate taxes due on the building. An unsigned promissory note with a signature block for petitioner, in his capacity as Inland's president, stated that interest was accruing on the unpaid principal at 5 percent per annum and that repayment was to be made through monthly installments of $10,000 beginning on April 1, 1993. The third loan was unsecured.

To date, no principal or interest has been paid on the first, second, or third loan (collectively, the three loans).

The plan has during its existence made two other loans to participants other than petitioner, and it has required that those individuals repay those loans.  Petitioner knew at the times of the three loans that his creditworthiness was poor, and he knew at the times of the second and third loans that Inland's creditworthiness was poor.  When petitioner and Inland failed to pay back the three loans according to their terms, petitioner, in his capacity as plan trustee, neither sought nor attempted to compel payment.

The relevant provisions of the plan are as follows:

7.2  INVESTMENT POWERS AND DUTIES OF THE TRUSTEE

(a) The Trustee shall invest and reinvest the Trust Fund to keep the Trust Fund invested without distinction between principal and income and in such securities or property, real or personal, wherever situated, as the Trustee shall deem advisable, including, but not limited to, stocks, common or preferred, bonds and other evidences of indebtedness or ownership, and real estate or any interest therein. * * *

* * * * * * *

7.4  LOANS TO PARTICIPANTS

(a) The Trustee may, in the Trustee's discretion, make loans to Participants and Beneficiaries under the following circumstances: (1) loans shall be made available to all Participants and Beneficiaries on a reasonably equivalent basis; (2) loans shall not be available to Highly Compensated Employees in an amount greater than the amount available to other Participants and Beneficiaries; (3) loans shall bear a reasonable rate of interest; (4) loans shall be adequately secured; and (5) shall provide for repayment over a reasonable period of time.

\*    \*    \*    \*    \*    \*    \*

(c) Loans made pursuant to this Section (when added to the outstanding balance of all other loans made by the plan to the Participant) shall be limited to the lesser of:

(1)  $50,000 reduced by the excess (if any) of the highest outstanding balance of loans from the plan to the Participant during the one year period ending on the day before the date on which such loan is made, over the outstanding balance of loans from the plan to the Participant on the date on which such loan was made, or

(2)  one-half (1/2) of the present value of the non-forfeitable accrued benefit of the Participant under the plan.

\*    \*    \*    \*    \*    \*    \*

(d) Loans shall provide for level amortization with payments to be made not less frequently than quarterly over a period not to exceed five (5) years.

\*    \*    \*    \*    \*    \*    \*

(f)  Any loans granted or renewed on or after the last day of the first plan Year beginning after December 31, 1988 shall be made pursuant to a Participant loan program.  Such loan program shall be established in writing and must include, but need not be limited to, the following:

(1) the identity of the person or positions authorized to administer the Participant loan program;

(2) a procedure for applying for loans;

(3) the basis on which loans will be approved or denied;

(4) limitations, if any, on the types and amounts of loans offered;

(5) the procedure under the program for determining a reasonable rate of interest;

(6) the types of collateral which may secure a Participant loan; and

(7) the events constituting default and the steps that will be taken to preserve plan assets.

Such Participant loan program shall be contained in a separate written document which, when properly executed, is hereby incorporated by reference and made a part of the plan.

Petitioner has never filed a Form 5330, Return of Excise Taxes, for any period relevant herein. The plan filed a Form 5500-C/R, Return/Report of Employee Benefit plan, for its plan years ended March 31, 1991, 1992, 1993, and 1995. The plan has not filed a Form 5500-C/R for any plan year thereafter.

The plan reported on its Form 5500-C/R for its plan year ended March 31, 1995, that it had as of March 31, 1995, "Other" investments of $203,241. Respondent determined that these investments were the three loans, that each of the three loans was a prohibited transaction under section 4975, and that the principal of the three loans totaled $203,241 as of January 1, 1996. Respondent also determined that a "stated interest rate" of 10 percent applied to each subject year for purposes of computing the "amount involved" under section 4975(a) and that, on the basis of this 10-percent rate, the amounts involved for the subject years were as follows:

| Date | Principal | Interest | Amount Involved |
|------|-----------|----------|-----------------|
| 1/1/96 | $203,241 | 10% | $20,324 |
| 1/1/97 | 223,565 | 10 | 22,356 |
| 1/1/98 | 245,922 | 10 | 24,592 |
| 1/1/99 | 270,514 | 10 | 27,051 |
| 1/1/00 | 297,565 | 10 | 29,756 |
| | | | 124,079 |

Respondent noted that section 53.4941(e)-1(e)(1), Foundation Excise Tax Regs., treats prohibited transaction loans as occurring on the first day of each taxable year in the taxable period after the year in which the loan occurs and determined on the basis of these regulations that petitioner owed first-tier excise taxes as follows:

| 1996 | 1997 | 1998 | 1999 | 2000 |
|------|------|------|------|------|
| $1,016 | $1,016 | $1,016 | $1,016 | $1,016 |
| -- | 2,236 | 2,236 | 2,236 | 2,236 |
| -- | -- | 3,689 | 3,689 | 3,689 |
| -- | -- | -- | 4,058 | 4,058 |
| -- | -- | -- | -- | 4,464 |
| 1,016 | 3,252 | 6,941 | 10,999 | 15,463 |

Respondent also determined on the basis of these regulations that petitioner owed a second-tier excise tax of $124,079 for 2001.

On January 19, 1994, Aspects filed a voluntary petition for bankruptcy. Aspects stated on that petition that it owed $195,000 to the plan and that the plan was an unsecured creditor. On February 6, 1995, the bankruptcy court overseeing the bankruptcy proceeding confirmed Aspects's "First Amended plan of

Reorganization" (confirmed plan). Under the confirmed plan, the plan continued to be listed as an unsecured creditor.

## OPINION

Respondent determined that petitioner is liable for both tiers of excise taxes under section 4975(a) and (b). Respondent asserts on brief that petitioner is a "disqualified person" under section 4975(e)(2) as to each of the three loans, that the plan is a "plan" under section 4975(e)(1), that each of the three loans is a "prohibited transaction" under section 4975(c), and that none of the three loans has been "corrected" within the meaning of section 4975(f)(5). Petitioner does not dispute that he was a "disqualified person" as to each of the three loans. He was. See, e.g., sec. 4975(e)(2)(A), (E).[1] Nor does petitioner

---

[1] Under subpars. (A) and (E), respectively, of sec. 4975(e)(2), a "disqualified person" is a person who is "a fiduciary" or "an owner, direct or indirect, of 50 percent or more of * * * the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation * * * which is an employer" of any employees covered by the plan. As relevant herein, petitioner was a fiduciary (i.e., a trustee) of the plan who was the sole owner of the stock of an employer (Aspects) whose employees were covered by the plan. Under sec. 4975(e)(2)(G), a "disqualified person" also is a corporation of which 50 percent or more of the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock is owned by a person described in sec. 4975(e)(2)(A) or (E). Thus, by virtue of its ownership by petitioner, Inland also was a disqualified person as to the second and third loans. The possibility that Inland may be liable for excise taxes under sec. 4975(a) or (b) as to the second and third loans is unimportant to our analysis in that petitioner is jointly and severally liable for any excise tax imposed on those loans by sec. 4975(a) and (b). See sec.
(continued...)

dispute that the plan was a "plan" within the meaning of section 4975.  It was.  See sec. 4975(e)(1)(A).  As we understand petitioner's argument on brief, he is not liable for any of the excise taxes respondent determined because none of the three loans is a prohibited transaction.  The three loans are not prohibited transactions, petitioner asserts, because (1) the loans were permitted by the plan, (2) the bankruptcy court has through its confirmation of the confirmed plan prescribed rules under which Aspects will repay the loans, (3) the Department of Labor has reviewed the loans and approved them, and (4) the loans were made in the best interest of the plan and its participants. Petitioner also asserts in this regard that the period of limitation has expired on the assessment of all of the excise taxes respondent determined as to the three loans.  Petitioner does not challenge respondent's calculation of the excise taxes shown in the notice of deficiency, including respondent's use of the 10-percent rate.

We agree with respondent that petitioner is liable for the excise taxes as determined.  Section 4975 was added to the Code in 1974 by the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, sec. 2003(a), 88 Stat. 971.  Congress enacted section 4975 to effect its intent to tax disqualified

---

[1](...continued)
4975(f)(1).

persons who engage in self-dealing rather than penalize innocent employees, who were previously faced with plan disqualification on account of a prohibited transaction. S. Rept. 93-383, at 94-95 (1973), 1974-3 C.B. (Supp.) 80, 173-174. Disqualification penalized employee/plan participants in that they were denied favorable tax consequences such as deferral of taxation. Id. at 94, 1974-3 C.B. (Supp.) at 173. The goal of Congress in enacting section 4975 "was to bar categorically a transaction that was likely to injure the pension plan." Commissioner v. Keystone Consol. Indus., Inc., 508 U.S. 152, 160 (1993) (citing S. Rept. 93-383, supra at 95-96, 1974-3 C.B. (Supp.) at 174-175).

Section 4975 imposes two tiers of excise taxes on a prohibited transaction. The first-tier tax, the rate of which depends on the date on which a prohibited transaction occurs, is imposed on the "amount involved" in a prohibited transaction for each year, or part thereof, in the taxable period. Sec. 4975(a). For prohibited transactions occurring before August 21, 1996, the rate of the first-tier tax is 5 percent. See sec. 4975(a) before amendment by the Small Business Job Protection Act of 1996 (SBJPA), Pub. L. 104-188, sec. 1453, 110 Stat. 1817. For prohibited transactions occurring after August 20, 1996, and before August 6, 1997, the rate of the first-tier tax is 10 percent. See sec. 4975(a) after amendment by SBJPA sec. 1453 (first-tier tax rate increased from 5 percent to 10 percent).

For prohibited transactions occurring after August 5, 1997, the rate of the first-tier tax is 15 percent. See sec. 4975(a) after amendment by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1074, 111 Stat. 949 (first-tier tax rate increased from 10 percent to 15 percent). The second-tier excise tax, equal to 100 percent of the "amount involved", is imposed when a transaction to which the first-tier tax applies is not corrected within the taxable period. See sec. 4975(b). In this context, the taxable period begins with the date on which the prohibited transaction occurs and ends on the earliest of (A) the date of mailing of a notice of deficiency with respect thereto, (B) the date on which the tax imposed by section 4975(a) is assessed, or (C) the date on which correction of the prohibited transaction is completed.[2] Sec. 4975(f)(2). A correction of a prohibited transaction may be accomplished by "undoing the transaction to the extent possible, but in any case, placing the plan in a financial position not worse than that in which it would be if the disqualified person were acting under the highest fiduciary standards." Sec. 4975(f)(5).

As to the first-tier tax, each of the three loans falls within the wide span of section 4975(a). Each of these loans is

---

[2] Here, the earliest of these three dates is Nov. 7, 2001; i.e., the date of which the notice of deficiency was mailed to petitioner. The taxable period, therefore, ends on that date absent an earlier correction of a prohibited transaction.

a "prohibited transaction" under section 4975(c)(1)(B), (D), and (E), and none of these loans is exempted from that definition by section 4975(d).  Under section 4975(c)(1)(B), the plan's lending of money to petitioner or to Inland was a "direct or indirect * * * lending of money * * * between a plan and a disqualified person".  Under section 4975(c)(1)(D), each of the three loans also was a "direct or indirect * * * transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan".[3]  See O'Malley v. Commissioner, 96 T.C. 644, 651-652 (1991), affd. 972 F.2d 150 (7th Cir. 1992).  Under section 4975(c)(1)(E), each of the three loans also was a direct or indirect "act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account".  Cf. Greenlee v. Commissioner, T.C. Memo. 1996-378; Gilliam v. Edwards, 492 F. Supp. 1255, 1263 (D.N.J. 1980).

Petitioner aims to avoid an application of section 4975(a) by advancing his five assertions set forth above.  Petitioner's reliance on these assertions is misplaced.  First, petitioner asserts incorrectly that because each of the three loans was

---

[3] Specifically, the three loans benefited petitioner in that he used the first loan to pay the payroll of his wholly owned corporation Aspects, he caused the second loan to pay his personal car payment, and he caused the third loan to pay the mortgage and payroll taxes on the building owned by a second wholly owned corporation, Inland.

permitted by the plan, none was a prohibited transaction. The first loan was not permitted by the plan. In that it has yet to be repaid more than 14 years after its making, the first loan failed the plan's explicit requirement that participant loans "provide for level amortization with payments to be made not less frequently than quarterly over a period not to exceed five (5) years." The second and third loans, both of which are different from the first loan in that they are not participant loans, were specifically prohibited by the statute upon their making. In other words, even if the plan did allow the second and third loans to Inland, we read nothing in section 4975 that would exempt these loans from that section's definition of a prohibited transaction.

As to petitioner's second assertion, the mere fact that the bankruptcy court confirmed a plan under which Aspects may repay each of the three loans is of no consequence to our decision. In addition to the fact that Aspects has not yet made any payment on those loans, we read nothing in the confirmed plan, nor has petitioner pointed us to anything, that persuades us that Aspects will eventually repay any or all amounts due on the three loans. In fact, as we read the confirmed plan, the plan's status is simply that of an unsecured creditor with rights no greater than those of any other unsecured creditor. Such an unfulfilled third-party obligation does not transmute the prohibited

transaction loans into acceptable loans, does not correct the prohibited transactions, and does not eliminate petitioner's liabilities for the excise taxes respondent determined as to the three loans. See <u>Medina v. Commissioner</u>, 112 T.C. 51, 55-56 (1999).

As to petitioner's third assertion, we find no evidence in the record that establishes, as petitioner asks us to find, that the Department of Labor has reviewed and approved each of the three loans. Although petitioner in his brief asks the Court to rely upon a certain letter from the Department of Labor, that letter was not admitted into evidence and, hence, is not evidence. See Rule 143(b).

As to petitioner's fourth assertion, petitioner relies mistakenly on his claim that the three loans were in the best interest of the plan and its participants. From a factual point of view, we are unable to find in the record that the loans were in the best interest of the plan and its participants. From a legal point of view, even if we could make such a finding, our conclusion would be the same: that the loans are prohibited transactions. As we noted in <u>Rutland v. Commissioner</u>, 89 T.C. 1137, 1146 (1987):

> The language and legislative history of ERISA indicate
> a congressional intention to create, in section
> 4975(c)(1), a blanket prohibition against certain
> transactions, regardless of whether the transaction was
> entered into prudently or in good faith or whether the
> plan benefitted as a result. "Good intentions and a

pure heart are no defense" to liability under section 4975(a).  <u>Leib v. Commissioner</u>, 88 T.C. 1474, 1481 (1987).

As to petitioner's final assertion, petitioner is mistaken in his belief that the period of limitation has expired on an assessment of the excise taxes at issue.  Although an assessment of excise taxes of that type must generally be made within 3 years of the date that the relevant return is filed, and more than 3 years have passed from the due date of most of the relevant returns which were required to be filed for the subject years, an exception applies where, as here, a return is never filed.  Sec. 6501(a), (c).  In a case such as this, the Commissioner may assess an excise tax at any time.  See sec. 6501(c)(3); see also secs. 301.6501(e)-1(c)(4), 301.6501(n)-1, Proced. & Admin. Regs.

We conclude that petitioner is a disqualified person who participated in three prohibited transactions by way of the three loans.  We also conclude that he did so other than as a fiduciary acting only as such.  A disqualified person such as petitioner participates in a prohibited transaction under section 4975 by approving the transaction or by receiving its benefit.  <u>O'Malley v. Commissioner</u>, 96 T.C. 644 (1991).  Petitioner's participation in the three loans other than as a fiduciary is seen from the fact that he approved them for the purpose of receiving their

benefit personally and that he did not take collection action when payment on the loans was overdue.

We sustain respondent's determination under section 4975(a) and turn to his determination under section 4975(b). Petitioner sets forth in his brief no specific objection to the latter determination. Respondent asserts as to this matter that petitioner has never corrected any of the three loans and that plan beneficiaries risk losing plan benefits as a result of those loans. Respondent concludes that petitioner also is liable for the second-tier excise tax. We agree.

Section 141.4975-13, Temporary Excise Tax Regs., 41 Fed. Reg. 32890 (Aug. 5, 1976) and 51 Fed. Reg. 16305 (May 2, 1986), provides that, absent permanent regulations for section 4975(f)(4) and (5), section 53.4941(e)-1, Foundation Excise Tax Regs., shall be relied upon to interpret terms contained in section 4975(f). Section 53.4941(e)-1(c)(4)(i), Foundation Excise Tax Regs., provides:

> In the case of the use by a disqualified person of property owned by a private foundation, undoing the transaction includes, but is not limited to, terminating the use of such property. In addition to termination, the disqualified person must pay the foundation—
>
> (a) The excess (if any) of the fair market value of the use of the property over the amount paid by the disqualified person for such use until such termination, and
>
> (b) The excess (if any) of the amount which would have been paid by the disqualified

person for the use of the property on or
after the date of such termination, for the
period such disqualified person would have
used the property (without regard to any
further extensions or renewals of such
period) if such termination had not occurred,
over the fair market value of such use for
such period.

In applying (a) of this subdivision the fair market
value of the use of property shall be the higher of the
rate (that is, fair rental value per period in the case
of use of property other than money or fair interest
rate in the case of use of money) at the time of the
act of self-dealing (within the meaning of paragraph
(e)(1) of this section) or such rate at the time of
correction of such act of self-dealing. In applying
(b) of this subdivision the fair market value of the
use of property shall be the rate at the time of
correction.

Pursuant to these regulations, where as here a prohibited

transaction is the lending of money, correction of the prohibited

transaction requires termination of the loan by its repayment

plus reasonable interest. Sec. 53.4941(e)-1(c)(4), Foundation

Excise Tax Regs.; see also Medina v. Commissioner, supra at 55;

Kadivar v. Commissioner, T.C. Memo. 1989-404. Given that none of

the three loans has been repaid, we conclude that petitioner did

not correct any of the prohibited transactions by November 7,

2001, the end of the applicable taxable period, and that the plan

was not "in a financial position not worse than that in which it

would be if the disqualified person were acting under the highest

fiduciary standards". See sec. 4975(f)(5). We sustain

respondent's determination that petitioner is liable for the

second-tier excise tax under section 4975(b). We note, however,

that sections 4961(a) and 4963(e)(1) generally allow for the abatement of a second-tier excise tax if the prohibited transaction giving rise thereto is corrected within 90 days after our decision sustaining the tax becomes final. Because the issue of whether petitioner will or would qualify for an abatement is not yet ripe for decision, we express no opinion on this issue at this time.

We turn to the additions to tax respondent determined under section 6651(a)(1). Respondent determined that petitioner is liable for these additions to tax because he did not file an excise tax return for 1996, 1997, 1998, 1999, or 2000. Petitioner argues that these additions to tax do not apply because the plan did not have the money to pay its plan administrator to prepare those returns. We agree with respondent.

A disqualified person who engages in a prohibited transaction is required to file an excise tax return for each taxable year in the taxable period. Secs. 4975(f)(2), 6011; sec. 54.6011-1(b), Pension Excise Tax Regs.; see also Janpol v. Commissioner, 102 T.C. 499, 500 (1994). Such a person who fails to do so timely is generally liable under section 6651(a)(1) for a monthly addition to tax equal to 5 percent of the amount of tax that should have been shown on the return, up to a maximum charge of 25 percent. See Janpol v. Commissioner, supra at 500. This

addition to tax does not apply where the failure to file was due to reasonable cause and was not due to willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985); Janpol v. Commissioner, supra at 504. Reasonable cause is present where the person exercised ordinary business care and prudence but was unable to file the return within the prescribed time. United States v. Boyle, supra at 245; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure or reckless indifference. United States v. Boyle, supra at 245.

Because petitioner was a disqualified person who engaged in prohibited transactions, and the transactions remained uncorrected upon issuance of the notice of deficiency, he was required to file an excise tax return for each year in issue. Petitioner did not file an excise tax return for any of these years. Nor has he established to our satisfaction that he had reasonable cause not to file those returns. Cf. United States v. Boyle, supra at 249 (taxpayers have a personal and nondelegable duty to file a timely return; reliance on an accountant to file a return does not provide reasonable cause for an untimely filing). We hold that petitioner is liable for the section 6651(a)(1) additions to tax respondent determined.

We have considered all arguments in this case and, to the extent not discussed above, find those arguments to be without merit or irrelevant.  To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.